UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Olean Murray, | ) | Civil Action No. 4:04-281-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | REPORT AND |
| | ) | RECOMMENDATION |
| South Carolina Department of | ) | |
| Corrections, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is an action filed by plaintiff alleging she was discriminated against on the basis of race and sex when she was passed over for promotion for the position of Major at the Turbeville Correctional Institute (TCI) which is part of the South Carolina Department of Corrections. The matter is before the court on defendant's motion for summary judgment filed January 31, 2005 (Document # 13).[1]

**Facts**

The job posting for the position of Major (Job Title: Correctional Officer IV) contained the following minimum requirements:

> State of South Carolina Minimum Training and Experience Requirements:
> A high school diploma and supervisory experience in correctional, security or police work.
>
> Additional SCDC requirements:
> High school diploma and six (6) years of correctional, security or police

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Court.

-1-

> work, to include two (2) years of correctional supervisory experience.
>
> Description of duties:
> Directs and supervises the daily operations and activities of approximately 250 uniformed staff in a medium/maximum security institution. Ensures the security and safety of all staff, inmates, and visitors. Under minimum supervision and guided by written policies and procedures, allocates officers and other resources to various duty shifts and functional areas. Conducts inspections of institutional facilities and equipment; assumes primary responsibility for security for all buildings and public property. Ensures that inmates maintain high standards of cleanliness and personal grooming. Prepares a variety of security related reports. Serves as on-call official and as duty warden on the weekends and holiday rotation. Must promptly respond to institution for emergencies, escapes, or any other justifiable reason. Performs other duties as required.
>
> Preference will be given to those individuals who have successfully completed the agency management development program or are current participant.

Defendant submits the affidavit of Robert E. Ward in support of its motion. Mr. Ward, Director of Operations of the SCDC, states in pertinent part as follows:

> 1. . . . I have held various positions with SCDC throughout my tenure to include Warden at Evans Correctional Institution, Acting Warden and Senior Deputy Warden at Lee Correctional Institution, Deputy Warden for Administration at Central Correctional Institution, and Deputy Superintendent at Watkins Pre-Release Center.
>
> 2. . . . I am involved in SCDC promotion decisions as Director of Operations and was involved with such decisions as Regional Director. On October 5, 2000, I conducted the applicant interviews for the Major vacancy position at TCI. I was not involved in the initial applicant screening process and understand that all applicants selected for an interview were minimally qualified.
>
> 3. I am knowledgeable about SCDC structure and understand what qualities are necessary for a Major. I understand that a Major is the chief uniformed officer of the institution. The Uniformed Division represents the largest employee population at the institution and thus, he/she must epitomize professionalism in their demeanor, be familiar with policy, communicate

> effectively with staff and inmates. The Major must also know inmate discipline and be very knowledgeable about emergency situations. Other key attributes include the ability to handle stress and make good decisions. . . .

George S. Waite, Jr., was chosen for the position of Major. He received his high school diploma in 1967. His past employment history included approximately twenty years in the United States Air Force in aircraft maintenance and as a supervisor. For the next approximately five years he was employed with Interlake Packaging and Norell East as a department foreman. He was hired by the SCDC in 1992. He served as a correctional officer for approximately eighteen months when he was promoted to Sergeant II in December 1994 where he worked in security. In December 1996, Mr. Waite was promoted to Lieutenant II at TCI and in February 1999, he was promoted to EHSO Lieutenant II for approximately sixteen days. He worked in security as a Lieutenant. He was promoted to Captain III at TCI on February 17, 1999, and remained in that position until he was promoted to Major in November 2000. While he was a Captain, he also served as a disciplinary hearing officer and was in charge of all discipline hearings at TCI.

Plaintiff finished high school and college and completed some courses towards a master's degree. She was a payroll clerk with Ward's Candy Company for three years ending in April 1977. She was a trust officer with Bankers Trust of South Carolina for approximately one year. She was then employed by South Carolina National Bank for approximately eight months as a Return Clerk. She taught school for one year and then was an administrative specialist with Midland R&E Center. She then was employed by defendant in August 1986 in Manning, South Carolina as a classification caseworker. This position involved assessing inmates for security, conducting interviews with inmates to assess their abilities, and development and maintenance of record systems. In 1986, she received correctional officer training at the SCDC Training Academy. On December 1, 1989, she

was promoted to Administrative Assistant II which became Administrative Specialist III. These positions were at TCI. As Administrative Specialist she was trained in management of the institution, including writing, reports, security, classification, inmates, managerial, and secretarial. She also supervised two clerical persons and a visitation coordinator. (Plaint. Dep. at 25-25).

In 1994, plaintiff became a Unit Manager at TCI. During the first year, she worked exclusively on policy and management because the facility was just opening and had no inmates. She participated in drafting policies and procedures and management structure. She also participated in screening and hiring individuals to fill staff positions, as well as hiring individuals who would be working in her unit, including a counselor, a correctional counselor and a social worker. As a Unit Manager, she reported directly to the Associate Warden and supervised seven individuals. Before approximately 1996, the Unit Manager was not a uniformed position and the security issues were handled by the Captain or the Associate Warden. Plaintiff also served a disciplinary hearing officer for a period of time while she was a Unit Manager. She also attended the SCDC Training Academy again in 1996.

Plaintiff's position as Unit Manager was changed to Shift Captain in 1996. As a night-shift Shift Captain, she supervised approximately forty officers, five or six teachers, six or more counselors, four or five food supervisors, medical personnel, a recreational officer, three caseworkers and over 1200 inmates. Gregory Knowlin was the Major and her supervisor. Major Knowlin evaluated plaintiff annually. The evaluations indicate that generally she met or exceeded expectations in the performance of her duties. (See Knowlin Dep. Exh. 1, 2 and 3). She received lower ratings on some security and policy and procedure related criteria than for other criteria. Major Knowlin testified that he did receive some complaints about plaintiff being too hard, not knowing

how to communicate with the staff or the officers. (Knowlin Dep. at 10). He feels she could have handled the position of Major if she received some training regarding dealing with subordinates. (Knowlin Dep. at 11). He also noted his concerns about communication with the officers in the summary section of the annual evaluations. (See Knowlin Dep. Exh. 1,2 and 3).

**Hiring Process**

The job is posted and individuals make application for the position. This is followed by a screening process and then a selection process. During the screening process, applicants are initially screened for stated minimum requirements and then the additional requirements included by the selecting official. Based on the requirements, each applicant is "scored" and the top scoring applicants are selected for an interview. Thirty applicants applied for the Major vacancy and eleven applicants were selected for an interview. Robert Stevenson, Associate Warden at TCI, served as the screening official for this position of Major. Warden Ralph S. Beardsley and Regional Director Robert E. Ward served as the selecting officials.

Once the screening process is complete, the applicants selected for an interview enters the interview with zero points. Points are then assigned by the selecting officials based on certain criteria, including performance during the interview and responses to the interview questions. The selecting official originates the interview questions. Warden Beardsley originated the interview questions for this position with input from Director Ward. Each applicant was asked the same six questions as follows:

    1)    What do you consider to be the primary responsibilities of the Major?

    2)    As a Major, you are a Duty Warden. What do you think the responsibilities are for the Duty-Warden?

    3)    You are the duty warden and are contacted by the institution that a disturbance is in process in a housing unit. The Warden and one of the Associate Wardens are not available. The other Associate Warden is at least three hours away from being able to arrive at the institution. Upon your arrival at the institution, what do you do?

    4)    A Captain on one your shifts continually operates outside of the policies of the agency and the guidelines provided by the management of the institution. Because of this, morale is low among the staff on that shift and inmates are constantly complaining about the Captain and staff on that shift not complying with the policies and directives. What do you do to address this problem?

    5)    The agency has stated that the inmate disciplinary infraction rate is too high and that institutions need to try and resolve more inmate problems informally. What can you do to achieve this?

    6)    What do you consider to be the agencies weakest or most unaccountable supervisory level (Sgt., Lt., Capt.)? Why? What can you do as a Major to change that?

Handwritten in is an additional question asking "what level should be held most accountable?"

Warden Beardsley and Director Ward conducted all of the interviews together and scored each candidate independently. (Ward Aff. ¶4). After the interviewing was complete, the applicants scores were tallied and Warden Beardsley's and Director Ward's scores were combined for each applicant. (Ward Aff. ¶4).

Plaintiff's score at the completion of the interview process was at total of 29. However, based on a mistake made in assessing points relating to her education history, the score should have been two points higher for a total score of 31. At least five other candidates had higher scores, including Mr. Waite who had the highest score of 49 points. Based on the scores, Mr. Waite was selected for the position. The difference in score between Mr. Waite and plaintiff was based on the most important criteria for the position, security and supervision experience and knowledge, and

their performance, as well as their presentation and appearance, during the interview. (Ward Aff. ¶ 5,6,7,8,9, and 10; Beardsley Dep. Exh. 8, 9 & 10; Beardsley Dep. at 20, 21).

In her deposition, plaintiff does not assert that she was the best qualified candidate but was more qualified than Mr. Waite. She testified at deposition that she did not believe that the interview questions were appropriate, and that she thinks the scores were manipulated after the interviews took place. (Plaint. Dep. at 123-125). She also states that the compilation of the scores was done different when she was the selecting officer for other positions. Additionally, prior to the interviews, Mr. Waite told individuals, including plaintiff, he was going to get the job.

Major Knowlin, a black male, occupied the position of Major before it became vacant and plaintiff and Mr. Waite applied for it.

Plaintiff filed her Charge of Discrimination on December 20, 2000, which states as follows:

> I.. On October 25, 2000, I was denied a promotion to the position of major.
> II. I received a letter of rejection from Connie Riley, recruiting and employment services. No specific reason was given for my denial of the promotion. I believe this action to be discriminatory because I am more qualified for the position of major than the white male selected.
> III. I believe I was discriminated against because of my race (black) and sex (female) in violation of the SC Human Affairs Law, as amended and Title VII of the US Civil Rights Act of 1964, as amended.

### Standard for Summary Judgement

Defendants filed their motion for summary judgment pursuant to Rule 56, FRCP. The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of

action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

## Analysis

### Failure to Promote Claim

Plaintiff alleges that she was discriminated against on the basis of race when defendant failed to promote her to Major.

There are two methods of proving a case of intentional discrimination under Title VII: the method set forth in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) (mixed-motive) and the method established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)(pretext).[2]

---

[2] Plaintiff asserts that the Supreme Court's opinion in Desert Palace v. Costa, 539 U.S. 90 (2003) in essence eliminates the burden shifting scheme and necessity of the pertinent *prima facie* case established in McDonnell Douglas. Clearly, in this circuit, this argument is without

Under the McDonnell Douglas[3] analysis, plaintiff has the initial burden of demonstrating a *prima facie* case of discrimination. In order to prove a prima facie case of discrimination for failure to promote, she must prove that (1) she is a member of a protected group; (2) she applied for the position in question; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. Taylor v. Virginia Union University, 193 F. 3d 219, 230 (4th Cir. 1999).[4]

Although defendant argues that plaintiff fails to present a *prima facie* case because she fails on the fourth element, fails to show she was rejected under circumstances raising an inference of discrimination. However, an inference of discrimination is established when a person outside the protected class was chosen for the position. Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994). Therefore, defendant's argument is without merit.

Once plaintiff has established a *prima facie* case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the termination. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 ((1981). This is merely a burden of production, not of persuasion. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). Once the defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole

---

merit. See Diamond v. Colonial Life & Accident Ins. Co., — F.3d —, 2005 WL 1713188 (4th Cir. 2005); Hill v. Lockheed Martin Logistics Mgmt, Inc., 354 F.3d 277 (4th Cir. 2004).

[3] The McDonnell Douglas analysis was refined in St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993), and Reeves v. Sanderson Plumbing Products, Inc., – U.S. –, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

[4] The required elements of a prima facie case of employment discrimination are the same under Title VII and Section 1981. Gairola v. Commonwealth of Va. Dept. of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir.1985).

remaining issue is "discrimination *vel non*." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000)(citing Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by the defendant is not its true reasons, but were pretext for discrimination. Reeves, 530 U.S. at 143. During all of the burden shifting scheme set forth in McDonald Douglas, the ultimate burden of proving that defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude defendant intentionally discriminated against her based on her race.

Defendant asserts that plaintiff must prove that she was better qualified to establish a failure to promote case, relying on Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960 (4thCir. 1996). Defendant misconstrues the legal precedent. Reeves tells us that a plaintiff can establish a Title VII claim by demonstrating a *prima facie case* plus evidence that the defendant's proffered reasons are false or unworthy of credence. Reeves, 530 U.S. at 147. It is not necessary in all circumstances that the proffered reason itself is false. Falsity can be shown by demonstrating that the reason, while itself true, is not the real reason for the adverse action. Therefore, plaintiff may show pretext by establishing (1) she is more qualified, or (2) regardless of the qualifications, the explanation is not the real reason for the adverse action. Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 269 (4th Cir. 2005); Dennis v. Columbia Colleton Med.Ctr., Inc., 290 F.3d 639, 648 n.4 (4th Cir. 2002).

Both parties argue that the facts show one is better qualified than the other. It is undisputed the most important criteria involved supervisory and security skills and experience. Even in the light

most favorable to the plaintiff, the facts do show that Mr. Waite had at least as much experience in the important aspects of the qualifications of the of the position. In fact, on a time basis, Mr. Waite had a greater length of experience in supervision. It is clear that plaintiff's experience was based in management until she became a Shift Captain. Defendant argues that she was qualified for the position as Shift Captain, but circumstances allowed her to move into the position because her prior position was reclassified. However, she did maintain this position from 1996 up to the interview process. While different in some respects, they both had experience in supervision, although the duration of Mr. Waite's experience in supervising greater numbers was greater. Also, the record does reflect that Mr. Waite's experience in actual performance of security related responsibilities was greater. However, as stated above, plaintiff did maintain the position of Shift Captain for a three of four year period prior to seeking this position.

The distinction between Mr. Waite and plaintiff becomes apparent at the interview stage. It is undisputed that Mr. Waite performed well and answered the questions more appropriately. It is also undisputed that plaintiff did not perform well. Although this aspect of the application process was subjective, it is, nevertheless, undisputed. It is not necessary to decide "whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."[5] Hawkins v. Pepsico, 203 F.3d 274, 279 (4thCir. 2000)(quoting and citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299(4th Cir. 1998); DeJarnette, 133 F.3d at 299 ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions

---

[5] "Proof that the employer's proffered reasons in unpersuasive, or even obviously contrived, . . . does not necessarily establish that [plaintiff's] proffered reason (race discrimination) . . . is correct." Reeves, 530 U.S. at 146-47. "It is not enough to disbelieve the [employer]." Love-Lane v. Martin, 355 F.3d 766, 788 (4th Cir. 2004). Plaintiff must show a reasonable jury could "believe [her] explanation of intentional race discrimination." Id.

made by firms charged with employment discrimination ...." (internal quotation marks omitted)); Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir.1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including workplace reorganization, as long as the employer does not violate the ADEA."); Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th Cir.1995) ("Title VII is not a vehicle for substituting the judgment of a court for that of the employer").  It is the perception of the employer that is critical. Hawkins, 203 F.3d at 280.  Even a reasoned decision based on incorrect facts is not evidence of pretext.  Pollard v. Rea Magnet Wire Co., 824 F.3d 557, 559 (7th Cir. 1987), cert. denied, 484 U.S. 977 (1987).

While plaintiff makes several bald, conclusory assertions in her brief ("after the interview the Plaintiff questioned others in regard to the questions that were presented to them and the course of events that occurred in their interview.  Through the Plaintiff's investigation the Plaintiff has presented a genuine issue of material fact for the jury."  "Due to the fact that the Plaintiff made allegations that Mr. Waite received the position because of his relationship with the Warden and the "good-ole-boy system."), they are insufficient to create a genuine issue of material fact to defeat defendant's motion for summary judgment.  Plaintiff has failed to meet her ultimate burden of presenting evidence from which a reasonable jury could conclude defendant intentionally discriminated against her based on her race.

For the foregoing reasons, it is recommended that the defendant's motion for summary judgment be granted.


September 2, 2005                                  s/Thomas E. Rogers, III
Florence, South Carolina                           Thomas E. Rogers, III
                                                   United States Magistrate Judge




**The parties' attention is directed to the important notice contained on the following page(s).**

-13-

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
## &
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503
